UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JENSEN,<br><br>         Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; BRECHT ENTERPRISES, INC. dba BMW OF ESCONDIDO; and DOES 1-100, inclusive,<br><br>         Defendants. | Case No.: 18cv103-WQH (NLS)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 49]** |

  Before the Court is the parties' joint motion for determination of discovery dispute, where Plaintiff Michael Jensen requests that the Court compel Defendant BMW of North America, LLC ("BMW") to provide discovery responses to a variety of deposition topics and requests for production. ECF No. 49. The Court ordered BMW to provide supplemental briefing regarding its databases and how they could be queried. ECF No. 50. BMW filed supplemental briefing, ECF No. 53, and Plaintiff filed a response. ECF No. 54. After due consideration of the parties' arguments and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel.

//

## I. BACKGROUND

In his complaint, Plaintiff alleges that he purchased a 2011 BMW 550i vehicle manufactured and distributed by BMW, which was covered by an express written warranty covering the utility and performance of the vehicle for a period of time. ECF No. 1-3 at ¶¶ 8-9. Plaintiff alleges that, during the warranty period, he experienced numerous defects with the vehicle. *Id.* at ¶ 10. He claims that Defendants were unable to adequately repair the defects but yet failed to replace the vehicle or buy it back. *Id.* at ¶ 11. Plaintiff brings causes of action under the Song-Beverly Consumer Warranty Act, for breach of warranty, and for fraud.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.*

Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

#### a. Requests Related to Similar Defects (Categories 8-11, 17-20; Requests for Production 16, 19, 21, 24, 46-47, 50)

Several of the discovery requests and topics at issue relate to information regarding defects in vehicles of the same make, model, and year as Plaintiff's vehicle. Plaintiff in particular seeks information related to what he terms "engine/oil consumption defects" and "air conditioning defects." For example, Plaintiff requested deposition testimony on the following topics:

> **Category No. 8**: Questions regarding the nature of the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are the same year, make, and model as the SUBJECT VEHICLE, including the cause of the ENGINE/OIL CONSUMPTION DEFECT(S), all available fixes that have been made available to your authorized dealers to date, and the subsequent results of such fixes.

> **Category No. 9**: Questions regarding YOUR ongoing efforts to repair or remedy the ENGINE/OIL CONSUMPTION DEFECT(S), including all internal tests, investigations and the number of modifications made to YOUR vehicles with the engine system used in the SUBJECT VEHICLE, including the number of such modifications made to YOUR vehicles which are the same year, make and model as the SUBJECT VEHICLE
>
> **Category No. 10**: Questions regarding the terms of YOUR Owners' manual, maintenance schedule, YOUR express warranty or any extended warranty that might be in effect, and as they relate to the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are the same year, make, and model as the SUBJECT VEHICLE.
>
> **Category No. 11**: Questions regarding all REPAIR DOCUMENTS that YOU have issued to YOUR dealers and/or consumers regarding the ENGINE/OIL CONSUMPTION DEFECT(S) or other non-conformities experienced by Plaintiff with respect to the SUBJECT VEHICLE.

ECF No. 49-3 at 2-22. Deposition categories 17-20 requested the same information, except for "air conditioning defects." *Id.* at 28-47.

Similarly, Plaintiff propounded the following requests for production, seeking similar information:

> **Request No. 16**: All documents that YOU or YOUR representatives use to evaluate consumers' request for vehicle repurchase, including any all documents used to evaluate consumers' requests for vehicle repurchase related to the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are the same year, make, and model as the SUBJECT VEHICLE.
>
> **Request No. 19**: Please produce all documents, including but not limited to electronic data and e-mails, concerning or relating in any way to any decision to issue any notices, letters, campaigns, warranty extensions, technical service bulletins and recalls concerning the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are the same year, make, and model as the SUBJECT VEHICLE, including the cause of the defect.
>
> **Request No. 21**: Please produce all documents, records and data, including but not limited to electronic data and e-mails, concerning customer complaints, claims, reported failures, and warranty claims related to the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are

4

the same year, make, and model as the SUBJECT VEHICLE, including but not limited to any databases in YOUR possession with information from dealers, service departments, parts departments, or warranty departments, and all documents concerning YOUR response to each complaint, claim or reported failure.

**Request No. 24**: Please produce all documents, including but not limited to electronic data and e-mails, concerning or relating in any way to any internal analysis or investigation by YOU or on YOUR behalf regarding the ENGINE/OIL CONSUMPTION DEFECT(S) in YOUR vehicles which are the same year, make, and model as the SUBJECT VEHICLE.

*Id.* at 61-82. Requests for production numbers 45, 46, 47, and 50 requested the same information, except for "air conditioning defects." *Id.* at 89-110.

### i.     Relevance

The parties dispute the relevance of the information sought in this discovery. Plaintiff argues that other courts have found this type of information regarding vehicles of the same make, model, and year to be relevant. ECF No. 49-37 at 3-4. BMW counters that the only documents relevant to a Song-Beverly case are the records for the subject vehicle. *Id.* at 13-17.

Both parties have cited cases that seem to support their argument as to relevance. Plaintiff cites to *Donlen v. Ford Motor Co.*, where the California state court held on appeal that the trial court did not err in admitting evidence pertaining to other vehicles that had the same transmission model as the subject vehicle. 217 Cal. App. 4th 138, 154 (2013) (finding such information probative). Plaintiff also cites to *Doppes v. Bentley Motors, Inc.*, where the California court of appeal found the trial court should have imposed terminating sanctions on defendant for failing to comply with discovery orders, which included information related to the same alleged defect in all affected vehicles over a period of years. 174 Cal. App. 4th 967, 971 (2009). Finally, in *Kas v. Mercedes-Benz USA, LLC*, though the case was a class action, the court granted a motion to compel for documents on "similar incidences of failure, durability, or performance" of the

allegedly defective part for "non-class vehicles".[1] No. 11-cv-1032-GHK-PJWX, 2012 WL 473931, at *1 (C.D. Cal. Feb. 1. 2012).

BMW cites to two cases that it contends are on directly point and support its position. However, upon review, the Court finds them not controlling and unpersuasive. First, BMW cites to a minute order entered in *McDonald v. BMW of North America LLC*, where the California state court denied a motion to compel on similar requests for production. ECF No. 49-9. The minute order does not provide much reasoning, and in fact, states that "[t]hese documents are relevant to the issue of whether Defendant knew of the defect plaguing Plaintiffs vehicle and whether Defendant failed to repurchase the vehicle in willful violation of the Song-Beverly Act"—a statement that seems contrary to its holding. *Id.* at 2.

Second, BMW cites to *Putnam v. BMW NA et al.*, where the district court also denied a motion to compel for similar requests. ECF No. 49-8. The court reviewed the *Donlen* and *Doppes* cases, as cited by Plaintiff, and found that while they "suggest that some discovery concerning other vehicles may be relevant in Song-Beverly actions," their holdings were limited to state court, proceeding under its procedural rules, and were not controlling in a federal action, proceeding under the Federal Rules. *Id.* at 7. The court found that the requests there, which were not limited to vehicles of the same make and model, were facially overbroad and declined to consider burden. While agreeing with the *Putnam* court that the state court cases are not controlling, the Court nevertheless finds them pertinent to the issues here. In this instance, the Court does not find there to be material differences between what may be considered relevant in state court versus

---

[1] The other cases cited by Plaintiff do not seem directly applicable. *Piergallini v. Alfa Leisure, Inc.*, Case No. 06-cv-0555, 2007 U.S. Dist. LEXIS 67384, *1 (S.D. Ohio Sept. 12, 2007), dealt with discovery regarding documents on the manufacture of the subject vehicle, not records of other similar vehicles. *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-CV-07849 WHW, 2013 WL 5574626, at *18 (D.N.J. Oct. 9, 2013), dealt with a motion to dismiss and held that a technical service bulletin could show the defendant had knowledge of the defect.

federal court.[2]

Generally, the Court agrees with BMW that the evidence required to prove liability under Song-Beverly focuses on records concerning the specific vehicle at issue. *See Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 303 (1995) (Sept. 14, 1995) ('An automobile manufacturer need not read minds to determine which vehicles are defective; it need only read its dealers' service records."). However, as Plaintiff points out, he is also seeking punitive damages. ECF No. 1-3 at 30 (relief to include "a civil penalty"). Under Song-Beverly, "[i]f the buyer establishes that the failure to comply was willful," the buyer may be entitled to receive a civil penalty, up to two times the amount of actual damages. Cal. Civ. Code § 1794(c). A defendant that did not replace or refund a vehicle under a "good faith and reasonable belief that the facts imposing the statutory obligation were not present" is not willful. *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1051 (2010). Nor does willful require a showing of malice or wrongdoing towards the other party. *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 894 (1989). Rather, willful requires a showing that defendant knew of its obligations under Song-Beverly but declined to fulfill them. *Bishop v. Hyundai Motor Am.*, 44 Cal. App. 4th 750, 759 (1996). Whether a defendant acts willfully is a question of fact for the jury. *Oregel v. American Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1104 (2001).

BMW argues that the cases that Plaintiff cites do not establish that information regarding similar defects in other vehicles are part of the willfulness inquiry. ECF No. 49-37 at 15-16. However, the cases that BMW cites to do not establish the converse—that information regarding other vehicles is categorically not to be considered in

---

[2] Of course, Rule 26 imposes other limitations and considerations. While the *Putnam* court considered only the facial overbroadness of the requests and did not continue to consider burden or proportionality, in light of the relevance and information regarding burden the parties have put forth, the Court finds that it is more appropriate in this case to consider tailoring the requests under Rule 26, as it will do below.

7

18cv103-WQH (NLS)

establishing willfulness.[3]  Given the standards recited above for establishing willfulness, the Court finds that information regarding whether the same defects were reported to BMW in other cars of the same make, model, and year as Plaintiff's subject vehicle could conceivably be relevant to whether BMW acted reasonably in denying Plaintiff's warranty claim.  A fact finder may find BMW's knowledge or lack of knowledge about the same defects to be a consideration in deciding whether BMW acted in good faith as to Plaintiff's specific case.  Thus, the Court concludes that these requests target information that meets the relevance bar.

### ii. Proportionality

Next, the Court turns to the other limitations set forth in Rule 26, namely regarding proportionality.  In the initial briefing, the parties disputed the burden imposed by this discovery.  Plaintiff argued that the information sought is available and searchable within BMW's databases.  ECF No. 49-37 at 10-11.  For example, Plaintiff argued that BMW has codes related to defects, such as repair/comeback codes, defect codes, labor codes, and parts numbers.  ECF No. 49-10 at ¶¶ 46-50.  Plaintiff also argued that BMW maintains databases, including its PuMA database, Customer Relations/Contacts database, and Warranty database, which can be searched using the defect codes to cull responsive information.  *Id.* at ¶¶ 51-72.  Regardless, Plaintiff put forth a proposal to limit the scope of the discovery.  ECF No. 49-37 at 11-12.  On the other hand, BMW argued that production on these requests would be extremely burdensome, citing the thousands of hours it would take for someone review all records related to the 5,635 vehicles that are the same make, model, and year as Plaintiff's.  *Id.* at 18-19.  The Court subsequently ordered briefing from BMW regarding whether their databases actually could be searched and for BMW to address the burden imposed by Plaintiff's proposed compromise.  ECF No. 50.

---

[3] *Krotin*'s statement that only the subject vehicle records are needed in a Song-Beverly action was not made in the context of willfulness, and the case does not explicitly mention willfulness at all.  38 Cal. App. 4th at 299.

As an initial matter, the Court does agree with BMW that, as written, the topics and requests for production are too broad. As BMW points out, the terms "engine/oil consumption defects" and "air conditioning defects" are broadly and vaguely defined, and not necessarily tied to the specific issues that Plaintiff experienced with his vehicle. The requests also target a broad set of "documents" related to these defects in other vehicles of the same make, model, and year. However, in light of the finding of relevance, the Court believes the way to strike the appropriate proportionality balance is to tailor the requests to the needs of the case. Having only Plaintiff's proposal for limiting discovery and no alternative proposal from BMW, the Court will consider Plaintiff's compromise position as a starting point in the tailoring effort. Plaintiff's suggested narrowing proposes limiting the production to the following:

(1) An email search limited to the top 6-10 engineers/managers responsible for the N63 engine in the subject vehicle;

(2) A search of BMW's PuMA, Customer Relations/Contact, and Warranty Repair databases using BMW's defect codes and part numbers associated with the vehicle parts implicated by the alleged defects; and

(3) Producing documents already produced in the *Bang* litigation.

ECF No. 49-37 at 11. The Court will address these individual components in turn.

First, as to the documents based on searches already conducted and produced in the *Bang* litigation, in its supplemental briefing, BMW continues to argue the request is disproportionate because the *Bang* litigation is a class action, but concedes that it can produce these documents as long as a protective order is in place. ECF No. 53. Because the requests target relevant information and the burden on BMW to produce these documents is small, the Court will **ORDER** BMW to produce those documents already collected and produced in the *Bang* litigation that are responsive to the requests at issue here. The parties are further **ORDERED** to submit a proposed joint protective order within one week of this order, if deemed necessary prior to production.

Second, as to databases, BMW provided additional information regarding the three

9

databases in question: (1) the PuMA database stores cases where dealerships can seek advice directly from BMW on hard-to-fix technical issues; (2) the Customer Relations/Contacts database stores information of any customer contact; and (3) the Warranty Repair database stores information related to warranty repairs. ECF No. 52 at 1-2. Each of these databases can be searched by vehicle make and model, specific part numbers, and specific fault codes. *Id.* These databases cannot be searched for generic terms such as "oil consumption" or "engine problems." *Id.* While BMW admits it is able to do searches by defect code and part number, it contends any search should be limited to match Plaintiff's exact vehicle make and model, and the search should in addition be limited geographically to Southern California. *Id.* at 5. The Court agrees that the search should be limited to vehicles from the same year, make, and model as Plaintiff's vehicle. However, the Court sees no reason—and BMW provides none—to limit the search geographically to Southern California or any other specific region. Accordingly, the Court will **ORDER** BMW to run a search across the PuMA, Customer Relations/Contacts, and Warranty Repair databases, limited to vehicles of the same year, make, and model as Plaintiff's subject vehicle and limited to only those records reporting problems with the same defect codes listed in any repair records pertaining to Plaintiff's vehicle and part numbers under warranty in Plaintiff's vehicle, and to produce those documents.[4] The Court further **ORDERS** the parties to meet and confer within one week of this order to agree as to what the exact part numbers and defect codes included should

---

[4] In its response to BMW's supplemental brief, Plaintiff discusses two other databases: the FASTA (which is described as a database that stores information contained in a BMW vehicle's control panel when the vehicle is connected to a diagnostic system) and CenterNet (which is described as having the ability to generate reports on defect codes). ECF No. 54 at 2-3. The Court declines to order BMW to produce anything related to these databases. Neither were mentioned in Plaintiff's original proposed compromise, and the Court is not inclined to expand the scope at this time. Furthermore, it appears that some of the data that would be gathered through these databases may be duplicative of what is already being ordered produced in the other databases.

10

18cv103-WQH (NLS)

be.[5]

Third, as to emails, in its supplemental briefing, BMW argued that Plaintiff's request for emails from the 6-10 top engineers would be extremely burdensome and expensive to collect and produce. BMW argues that Plaintiff's definitions of "engine/oil consumption defects" and "air conditioning defects" are too vague for determining an appropriate search term. ECF No. 53 at 3. BMW further claims that engineers would have to cull through search results to find what is actually relevant. *Id.* at 3-4. BMW states that it could search based on defect codes or part numbers. *Id.* at 4. Plaintiff suggests that the burden is not as extensive as BMW makes out—for example, Plaintiff points out that in other cases involving BMW and issues with the same model engine as in his vehicle, BMW's other counsel have suggested being able to look through folders for relevant emails because BMW engineers often categorize their emails into folders. ECF No. 54 at 3-4; ECF No. 54-5. In addition, Plaintiff agreed to limit the search to only two engineers (Michael Murray and Roger Brown) rather than the 6-10 originally requested. ECF No. 54 at 4. Plaintiff also puts forth some suggestions on formulating search terms, mostly including in the search string the engine in Plaintiff's vehicle or his vehicle body type, in various combination with words such as "engine," defect," "problem," and "excess oil consumption." *Id.* at 4-5.

Both parties raise valid concerns with problems that often arise in custodial email searches. Plaintiff's willingness to limit the search to two individuals should alleviate some of the concerns that BMW has as to identification of the "top" 6-10 engineers. However, the issue of what search terms to use still remains. The Court finds BMW's

---

[5] The Court cautions that it expects the parties to work cooperatively in order to complete the production ordered here. Some of the disputes over details that have been brought forth in this motion are the type of minutiae that the Court generally expects sophisticated litigants and counsel, like the ones here, to work out on their own through the meet and confer process. Now that the Court has ruled that the requests in question are relevant, the parties are expected to make reasonable compromises as to the details of the production in accordance with this order.

suggestion of limiting the email search to defect codes and/or part numbers to be too restrictive—while searching on these codes makes sense in databases where there is a field for them specifically, it is unclear that engineers would adopt these terms for use in their emails. On the other hand, Plaintiff's search terms may be too broad and encompass other engine problems in the N63 engine or F10 body type that are not the same as the ones experienced by Plaintiff and at issue in this case. If faced with only the option of choosing from the parties' proposed search terms, Plaintiff's suggestion may be the preferable option because that it would capture the responsive materials whereas BMW's suggestion may miss many relevant emails. However, the Court finds that the better option is to order the parties to meet and confer to develop a more robust search string to search the emails of the two engineers that would best capture any communications regarding the engine problems that Plaintiff's vehicle specifically experienced.[6] Thus, this request is **GRANTED IN PART**, and the parties are **ORDERED** to meet and confer within one week of this order regarding the appropriate search terms.

Finally, while Plaintiff includes in this motion disputes over deposition topics on these defect issues, he does not appear to request more deposition time in his motion or in the proposed compromise. Accordingly, the Court declines to grant any additional deposition time.

//
//
//
//

---

[6] The Court's order does not preclude the parties from otherwise limiting the search. For example, if the parties find that the search can be narrowed in other manners, such as by limiting the search to only certain folders, they are free to do so. Ultimately, the parties have the knowledge as to the actual defects at issue and, in particular BMW, has the knowledge as to how these defects may be discussed internally by its engineers.

### b. Categories 24 and 26[7]

These two deposition categories seek information related to BMW's policies and procedures regarding the Song Beverly Consumer Warranty Act.

> **Category No. 24**: Questions regarding YOUR policies and procedures to ensure you are in compliance with the requirements of the Song Beverly Consumer Warranty Act.
>
> **Category No. 26**: Questions concerning how YOU calculate restitution offered to consumers pursuant to the Song Beverly Consumer Warranty Act.

ECF No. 49-38 at 53-55. At the outset, BMW argues that this information is not relevant because the requests target information related to the design of the engine components and breach of warranty claims cannot be based on design defects. *Id.* at 54-55. The Court does see how these requests are targeting information regarding engine design. They seem to target information regarding BMW's policies and procedures regarding Song-Beverly, and such information is relevant to Plaintiff's claim. *See, e.g.*, *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th at 136 (1995) (one of factors in willfulness consideration is "whether the manufacturer had a written policy on the requirement to repair or replace"); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 186 (1994) (written policy relevant to whether defendant acted on good faith).

Finding these requests target relevant information, however, Plaintiff does not state

---

[7] For these requests, as well as the ones discussed below, the parties give short shrift to bringing them for proper adjudication in front of the Court. The parties' joint memorandum of points and authorities needs to set out the general parameters of what is in dispute. These requests are not substantively discussed anywhere in the parties' joint memorandum and, instead, discussed for the first time in the accompanying Joint Statement. This stands contrary to the interaction between the memorandum and joint statement contemplated in the Chamber Rules—otherwise, the parties could too easily circumvent the page limits of the memorandum by simply moving arguments to the joint statement. The Court will nevertheless address these requests in the instant motion, but cautions the parties against this practice in the future.

what relief he seeks.[8] BMW offers that it has no written policy. Plaintiff states that if this is the case, BMW should so declare under the penalty of perjury. The Court agrees, and **ORDERS** BMW to either (1) produce any responsive written policies or procedures regarding compliance with Song-Beverly or written protocols or processes for calculating restitution, or (2) supply Plaintiff with a signed declaration stating as such under the penalty of perjury. BMW also states that there is a Warranty Policy and Procedure Manual provided to dealerships and it would produce this only under a protective order. The Court has already ordered the parties to submit a proposed protective order, so will **ORDER** BMW to produce this document within a week of a protective order being granted in this case. The motion to compel on these requests is otherwise **DENIED**.

### c. Categories 27 and 28

These two deposition categories seek information related to BMW's efforts to preserve documents and to search for responsive documents.

> **Category No. 27**: Questions regarding YOUR efforts to preserve relevant and discoverable information in this matter, including, but not limited to, any preservation letters, the custodians upon whom such preservation letters were sent, the efforts undertaken to prevent against the deletion or destruction of information, etc.
>
> **Category No. 28:** Questions regarding YOUR efforts to search for documents and information responsive to Plaintiff's discovery requests in this matter, including, but not limited to, the sources of information (both hard copy and electronic databases) searched, the search methods employed, the search terms employed, the identification of custodians for such sources of information, etc.

ECF No. 49-38 at 57-59.

Essentially, Plaintiff seeks discovery on discovery itself with these requests. "Discovery into another party's discovery process is disfavored." *Ashcraft v. Experian Info. Sols., Inc.*, No. 16-cv-02978-JAD-NJK, 2018 WL 6171772, at *2 n.2 (D. Nev. Nov.

---

[8] These are categories for deposition, but nowhere does Plaintiff request more deposition time.

14

18cv103-WQH (NLS)

26, 2018); *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *17 (D. Md. Feb. 21, 2017) (collecting cases holding same). "[R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121-LAK-JCF, 2014 WL 4547039, at *2 (S.D.N.Y. July 25, 2014). Generally, courts will only permit such discovery where there is some indication that a party's discovery has been insufficient or deficient. *Id.*

Plaintiff provides no particularized reason whatsoever for why such discovery should be ordered here, besides that this is "litigation." This superficial reason is far from sufficient. The Court **DENIES** the motion to compel as to these requests.

### d. Requests for Production 62 and 64

These two requests for production seek the following information:

**Request No. 62**: Please produce all documents, including but not limited to electronic data and e-mails, concerning or relating in any way to any BMW of North America, LLC, employee, subsidiary, department, and/or division reporting or organizational structure and/or charts effective from 2011 to the present, including any organizational chart or other documents describing any reporting or superior subordinate relationship, or any policies and procedures regarding communications between employees, subsidiaries, departments, and/or divisions.

**Request No. 64**: Please produce all documents, including but not limited to electronic data and e-mails, concerning or relating in any way to the issuance of TSB SIB 61-13-05.

ECF No. 49-38 at 117-120. The Court **DENIES** the motion to compel on these requests as untimely.

BMW previously sought to bar Plaintiff from bringing a discovery dispute on the discovery discussed above regarding similar defects in vehicles of the same make, model, and year. ECF No. 35. In its order ruling on that motion, the Court found that any dispute as to written discovery would be untimely. ECF No. 43 at 3. However, because the deposition categories discussed covered largely the same material and a dispute as to

those would be timely, in its discretion, the Court permitted Plaintiff to bring this instant discovery dispute. *Id.* at 4-5.

Unfortunately, these requests for production—which clearly qualify as written discovery—do not fall within the confines of what the Court permitted in its previous order. These two requests for production are untimely because they were part of the same set of written discovery that the Court previously found untimely. ECF NO. 35-2 at 109-110. But unlike the discovery into vehicles of the same make, model, and year, Plaintiff has not identified any corresponding deposition topics that overlap with these requests. Thus, the Court's reason for permitting the untimely dispute—to align the issue across written discovery and testimony—does not apply to these requests. Furthermore, these requests cannot be considered to be contemplated in the Court's previous order on timeliness either because the Court was only provided with a copy of Plaintiff's draft memorandum of points and authorities (ECF No. 42-1), which do not mention these wholly unrelated requests. *See supra* fn. 7. Thus, the Court **DENIES** the motion to compel as to these requests as untimely and will not address them substantively.

### IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel, consistent with the individual rulings above. Unless otherwise specified above, any documents ordered produced in this order should be produced **within three weeks** of this order.

**IT IS SO ORDERED.**

Dated: January 15, 2019

Hon. Nita L. Stormes
United States Magistrate Judge