Christine J. Haw (SBN 289351)
Email: chaw@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
**A PROFESSIONAL CORPORATION**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Dara Tabesh (SBM 230434)
dara.tabesh@ecotechlaw.com
**EcoTech Law Group, P.C.**
5 Third St., Suite 700
San Francisco, CA 92101
Telephone: (415) 651-8639
Facsimile: (415) 503-9194

Michael H. Rosenstein (SBN 169091)
mrosenstein@rose-lawoffice.com
**LAW OFFICES OF MICHAEL H. ROSENSTEIN, LC**
10250 Constellation Blvd. Ste. 2500
Los Angeles, CA 90067
Telephone: (310) 286-0275
Facsimile: (310) 286-0274

Attorneys for Plaintiff MIKE JENSEN

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE JENSEN,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendants. | Case No.: 3:18-CV-00103<br><br>[Honorable Nita L. Stormes]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION TO AMEND THE SCHEDULING ORDER AND/OR CONTINUE THE MANDATORY SETTLEMENT CONFERENCE DUE TO UNAVAILABLITYOF COUNSEL** |

**Table of Contents**

I.  INTRODUCTION ........................................................................................... 3
II.  STATEMENT OF FACTS ............................................................................. 5
    A.  The Case Schedule ................................................................................ 5
    B.  BMW's Discovery Production Remains Incomplete With Pre-Trial Deadlines Looming ............................................................................... 6
    C.  The Proposed Amendments .................................................................. 8
    D.  Plaintiff Gave Notice of This *Ex Parte* Motion to BMW .................... 10
III.  LEGAL ANALYSIS .................................................................................... 11
    A.  The Legal Standard Applicable to a Request to Modify the Scheduling Order ................................................................................ 11
    B.  Plaintiff Has Shown Due Diligence .................................................... 12
        1.  BMW's pervasive discovery misconduct, which continues to this day, provides good cause for amending the case schedule ........... 12
        2.  Even if BMW's discovery is complete, BMW delayed matters for at least 11 Weeks, providing good cause of amending the case schedule ................................................................................... 14
    C.  BMW Cannot Reasonably Claim Prejudice Where Its Own Conduct Is the Source of any Alleged Prejudice ...................................................... 15
IV.  RELIEF IS REQUIRED ON AN *EX PARTE* BASIS ............................... 16
V.  CONCLUSION ............................................................................................ 16

## CASES

*Davis v. Calvin*, No. CIVS071383FCDEFBP, 2008 WL 4287149, at *2 (E.D. Cal. Sept. 10, 2008) ................................................................................. 13

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ..... 11, 14

*Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (1995) ............................................................................ 15

*Univ. of Tulsa v. Johnson Matthey Inc.*, No. 16-CV-103-TCK-PJC, 2016 WL 10567162, at *2 (N.D. Okla. Oct. 26, 2016) ...................................................... 13

## STATUTES

Fed. R. Civ. P. 16(b) ............................................................................... 11,14

Fed. R. Civ. P. 26(a)(3) ................................................................................. 8

## I.     INTRODUCTION

Since earlier than November 2018, the parties have been mired in a discovery dispute where Plaintiff has sought—and BMW continues to withhold—certain discovery regarding vehicles of the same make, model, and year as the Subject Vehicle. The Court, in its January 15, 2019 Discovery Order (Docket No. 55), ordered production of specific sets of discovery—including information from BMW's Warranty, Customer Relations/Contacts ("CR"), and PuMA databases; responsive emails from Michael Murray's email account; and responsive documents already produced in the *Bang* litigation—by February 5, 2019. To date, after two sanctions and compliance motions filed by Plaintiff (the latter still pending), and repeated instances of BMW's bad faith during the meet-and-confer process, BMW's production remains incomplete (though it misleadingly attempted to portray that discovery as complete in its April 23 declarations, which the Court ordered to be produced by that date (Docket No. 77)). And even the limited Warranty database information that was produced by BMW in late March, Plaintiff had his expert is evaluating it, but this effort was made more difficult and time-consuming by the bad-faith manner in which that production was made.[1]

And even if BMW's discovery is complete as of its April 23 declarations—and to be clear, it is not (*see generally* Docket No. 89)—the Court has already found that BMW violated its Discovery Order by failing to produce any responsive

---

[1] Instead of producing the data as used in the ordinary course of business, *e.g.*, in native format capable of use in Excel or other spreadsheet programs, BMW took the extra step of converting its excel tables to .PDF format. This makes Plaintiff's review of the production more time consuming, as this prevents Plaintiff from rearranging any of the the data. As one example, in .PDF form, Plaintiff cannot arrange data by part numbers to show failure rates of specific parts. Even more egregious is BMW's stripping the tables of key data, such as dates, vehicle identification numbers (VINs), and mileage. This, for example, undermines Plaintiff's efforts to establish when BMW became aware of the alleged defects (because dates are missing). Likewise, without VINs Plaintiff will have difficulty showing if a specific vehicle was returned multiple times for the same type of warranty repairs, evidence that BMW implemented fixes it knew would not work. In any event, Plaintiff continues to review the data in the form it was produced.

document by the February 5 deadline (*i.e.*, before the close of expert discovery), so BMW is still, at a minimum, solely responsible for the 11-week delay from that deadline to the filing of its April 23 declarations, so BMW is solely responsible for Plaintiff's inability to use the disputed discovery during expert discovery, which closed on February 21.

Ultimately, Plaintiff's recent Second Motion for Sanctions was made necessary; *inter alia*, after the scope of BMW's dishonesty was revealed in those April 23 declarations.[2] Indeed, it was upon reviewing those declarations that Plaintiff prepared and filed its Second Motion for Sanctions on May 11.

And now, because BMW has delayed completion of its discovery obligations for months on end, Plaintiff must now seek a continuation of the upcoming pre-trial deadlines set forth in the Scheduling Order (Docket No. 24), as well as continuation of the expert discovery deadlines that passed last February (*i.e.*, after the time BMW should have completed its discovery production), so that Plaintiff may supply the sought-after discovery to his experts, as the discovery is plainly relevant, to, *inter alia*, Plaintiff's underlying Song-Beverly claims, Plaintiff's civil penalty claims under Song-Beverly, Plaintiff's fraud claim (which includes the potential for punitive damages), and Plaintiff's response to any motion for summary judgment ("MSJ") BMW may bring in the unlikely event BMW can show good cause why its motion was not filed timely.[3] But for BMW's refusal to produce this discovery, it

---

[2] The Declaration of Roger Brown (Docket No. 86), which attests to BMW's ostensible completion of its database productions, and the Declaration of Athena Yontz (Docket No. 87), which attests to BMW's ostensible completion of its email production.

[3] BMW had already filed an MSJ to this end (*see* Docket No. 66), but after Plaintiff's Motion to Strike (Docket No. 66), the Court took it off calendar and explained that BMW may re-file its MSJ after making a <u>showing of good cause</u> to have it filed after the pre-trial deadline has passed (*see* Docket No. 88).

During the meet-and-confer process preceding this Motion, BMW sought to have good cause to file its MSJ established reciprocally by Plaintiff's good cause showing here. (*See* Tabesh Decl. Ex. C.) This ignores the fact that Plaintiff's good cause is based on BMW's discovery misconduct and delay, something BMW should not be able to rely on to its benefit. Further, this ignores

could have been produced to Plaintiff's experts prior to the close of expert discovery.

As explained in further detail below, good cause to amend the scheduling order is evident, because Plaintiff has been diligent in seeking this amendment, as it was only after BMW filed its April 23 declarations that its continued discovery was exposed. Further, BMW cannot reasonably claim prejudice, where its own conduct is the reason why discovery production has been so delayed that, that at this point, it unlikely that the discovery BMW should have already produced will be produced by those pre-trial deadlines.

Under these circumstances, amending the case schedule is appropriate.

## II.   STATEMENT OF FACTS

### A.   The Case Schedule

On May 1, 2018, the Court issued its Scheduling Order, setting dates, *inter alia*, for expert discovery, pre-trial events, and the Mandatory Settlement Conference. (Docket No. 24.) In particular, expert reports were to be exchanged by December 7, 2018 (*id.* ¶ 3), rebuttal expert reports were to be exchanged by December 21, 2018 (*id.* ¶ 4), expert discovery was to close by January 1, 2019 (*id.* ¶ 6), the Mandatory Settlement Conference was set for October 24, 2018 (*id.* ¶ 9), and the pre-trial conference was set for June 21, 2019 (*id.* ¶ 17; *see also id.* ¶¶ 13-16 for related pre-trial deadlines).)

On May 15, 2018, the Court re-set the Mandatory Settlement Conference for October 25, 2018. (Docket No. 26.)

On October 24, 2018, the Court reset the Mandatory Settlement Conference for May 1, 2019. (Docket No. 41.)

On November 13, 2019, the Court ordered new expert discovery dates, with

---

the fact Judge Hayes ordered BMW, not Plaintiff, to make a showing of good cause sufficient to justify re-filing its MSU. (Docket No. 88 at 3:12-13 ("Defendant, upon a showing of good cause, may request leave to file a motion for summary judgment outside of the time provided in the scheduling order.").)

expert disclosures to be exchanged by December 21, 2018, rebuttal expert disclosures to be exchanged by January 11, 2019, and expert discovery to close by February 1, 2019. (*See* Docket No. 48 at 2-3.)

On April 3, 2019, the Court vacated the May 1, 2019 Mandatory Settlement Conference. (Docket No. 71.)

On May 14, 2019, the Court reset the Mandatory Settlement Conference to its currently scheduled date of May 29, 2019. (Docket No. 92.)

### B. BMW's Discovery Production Remains Incomplete With Pre-Trial Deadlines Looming

On November 30, 2018, the parties filed their Joint Discovery Motion. (Docket No. 49.) On January 15, 2019, following supplemental briefing,[4] the Court issued its order (Docket No. 55) ("Discovery Order"), which directed BMW to produce documents, for the most part, by February 5, 2019. Specifically, the Court ordered BMW to produce documents from its PuMA, Warranty, and CR databases; emails from Michael Murray's email account; and responsive documents from the *Bang* litigation. Further, the Court directed the parties to meet and confer about the search terms BMW would use in its database and email searches. Details about this meet-and-confer process—and in particular, BMW's bad faith in the meet-and-confer process—are set forth in the Declaration of Dara Tabesh filed in Support of Plaintiff's Motion for Compliance and for Sanctions (Docket No. 61-3), paragraphs 5-25, and the exhibits cited thereto.

The February 5, 2019 compliance deadline arrived and passed, however, without BMW having produced a single document—even after additional meeting

---

[4] As explained in the papers filed with Plaintiff's recent Second Motion for Sanctions, the Court expressly relied on BMW's Supplemental Brief (Docket No. 53) in its Discovery Order. Unfortunately, it was not revealed until BMW's filing of the April 23 declaration of Roger Brown that BMW had deceived the Court in its Supplemental Brief, which is one of the many bases for Plaintiff's pending requests for sanctions (or in the alternative, further compliance by BMW).

and conferring—which forced Plaintiff to file a Motion for Compliance and Sanctions on March 4, 2019. After full briefing, the Court issued its order on April 9, 2019, which directed BMW to produce documents by April 23, 2019, and to file declarations attesting that its production was complete. (Docket No. 77.) During the briefing period and thereafter, BMW did produce warranty data, but the production was deficient for various reasons, including the fact that BMW produced it in .PDF form (*i.e.*, not as used in the regular course of business, and also, stripped of key data). Otherwise, BMW produced no emails from Mr. Murray, no PuMa documents,[5] no CR data, and only 44 pages of *Bang* litigation documents, even though much responsive information certainly remains unproduced from those sources. (*See generally* Docket No. 89-1 at 1-3.) Further, BMW's declarations, which were filed on April 23, 2019, proved that BMW had not conducted its document searches in good faith. They also revealed, for the first time, that BMW had been disingenuous with the Court in its Supplemental Brief (Docket No. 53), which the Court relied on in its Discovery Order (Docket No. 55.)[6]

Accordingly, on May 11, 2019, Plaintiff filed its Second Motion for Sanctions. On May 14, the Court issued the briefing schedule for this motion, with briefing to be completed by June 4, 2019. (Docket No. 91.) (Also, on that same date, the Court reset the Mandatory Settlement Conference for May 29, 2019. (Docket No. 92.))

Thus, some reasonable time after June 4, Plaintiff expects to receive an order

---

[5] Indeed, no PuMA documents were produced, even though the warranty data produced had at least hundreds of references to PuMA documents. (*See* Docket No. 89-1 at 1 fn.2, 6:10-12, and 9:1-16.)

[6] In its Sanctions Order, the Court also ordered sanctions on BMW for each day BMW delayed production of each of the relevant categories of information. At a minimum, BMW accumulated $1700 in sanctions per the Sanctions Order (which it has not yet paid), though such sanctions do not appear to have had an effect on BMW's willingness to produce responsive discovery. (*See* Docket No. 89-1 at 8:15-17.)

<000000>

that either terminates this case or certain issues, and/or compels further discovery. If further discovery is compelled, Plaintiff will need to time to review the production and to provide the documents to Plaintiff's experts, so that the experts can issue their disclosures and supplemental reports and rebuttal reports, and submit to depositions. BMW, too, will need to undertake the very same steps.

Only after these steps are complete should the parties proceed with the pre-trial deadlines. Accordingly, Plaintiff seeks a continuance of these deadlines by 90 days.

### C. The Proposed Amendments

With good cause for the proposed amendments to the case schedule explained below, Plaintiff proposes the following date continuances:

| Event | Current Deadline | Proposed Amended Deadline |
|---|---|---|
| Expert disclosures, including supplemental disclosures. | December 21, 2018[7] (Docket No. 48 at 2.) | July 16, 2019 |
| Rebuttal expert disclosures. | January 11, 2019 (Docket No. 48 at 2.) | July 23, 2019 |
| Expert discovery cutoff. | February 8, 2019 (Docket No 48 at 3.) | August 13, 2019 |
| Comply with pre-trial disclosure requirements of Fed. R. Civ. P. 26(a)(3). | May 24, 2019 (Docket No. 24 ¶ 13.) | August 22, 2019 |
| Deadline for parties to meet and take the action required by Local Rule 16.1(f)(4). | May 31, 2019 (Docket No. 24 ¶ 14.) | August 29, 2019 |

---

[7] The parties served their original expert disclosures on each other on December 21. For the amended deadline, Plaintiff proposes that the parties be able to supplement their expert's disclosures based on the additional discovery that will have been produced by the proposed July 16 deadline. Plaintiff also proposes that the parties be permitted to designate additional experts in light of the discovery that BMW has recently produced and will produce, and submit those expert's disclosures by this date.

| Plaintiff to provide defense counsel with Plaintiff's portion of pre-trial order. | June 7, 2019 (Docket No. 24 ¶ 15.) | September 5, 2019 |
|---|---|---|
| Serve and Lodge with Judge Hayes the parties' Proposed Final Pretrial Conference Order, including objections to any other parties' Fed. R. Civ. P. 26(a)(3) Pretrial Disclosure. | June 14, 2019 (Docket No. 24 ¶ 16.) | September 12, 2019 |
| Pre-trial conference before Judge Hayes. | June 21, 2019 (Docket No. 24 ¶ 17.) | September 19, 2019 |

Essentially, Plaintiff proposes (1) a 90-day continuance for the upcoming pre-trial deadlines, and (2) to reopen expert discovery, with the first deadline for expert disclosures, including supplemental disclosures, to be set for July 16. Plaintiff submits that this schedule will provide enough time (a) for the parties to brief Plaintiff's pending Second Motion for Sanctions, which will be complete by June 4, (b) for the Court to issue an order on that motion, and if further discovery is compelled, (c) for BMW to produce such discovery, and (d) for Plaintiff to provide that discovery to its experts for evaluation for expert disclosures, something it was deprived of doing because BMW refused to produce the discovery in the first instance.[8]

Further, though not shown on the table above, Plaintiff also seeks a continuance of the Mandatory Settlement Conference, which was recently reset for May 29, 2019. Unfortunately, lead trial counsel on this case, who is responsible for this litigation, Michael Rosenstein of the Law Offices of Michael H. Rosenstein, LC, is scheduled for consecutive trials on May 28 and June 3. (*See* Declaration of Dara Tabesh ("Tabesh Decl.") ¶ 3; *see also* Docket No. 24 ¶ 10

---

[8] Specifically, this will provide six weeks for (a)-(d) to occur. To the extent the Court believes this time frame is unrealistic, Plaintiff would certainly be amenable to an amended case schedule that provides additional time.

9
**MEMO. IN SUPPORT OF *EX PARTE* MOTION TO THE AMEND SCHEDULING ORDER**

(requiring the "principal attorney(s) responsible for the litigation" to be present at Mandatory Settlement Conference).)

Mr. Rosenstein's presence at the Mandatory Settlement Conference is of key importance to Plaintiff, as Mr. Rosenstein is not only intimately familiar with the key issues in this case, he also brings to bear experience in litigating cases against BMW touching upon the same issues. In fact, the two trials that render Mr. Rosenstein unavailable are about BMW vehicle containing the same type of N63 engine implicated here.

Accordingly, Plaintiff proposes that the Mandatory Settlement Conference be continued either to:

(1) A date that is between three to four weeks before the Pre-Trial Conference, as is currently the case, or

(2) Any other date convenient to the Court, taking into consideration the availability of Plaintiff's lead trial counsel.

### D. Plaintiff Gave Notice of This *Ex Parte* Motion to BMW

On May 15, 2019, Plaintiff provided notice of this *Ex Parte* Motion to BMW by email, with Plaintiff, setting forth the proposed amendments to the case schedule and the bases for these amendments. (*See* Tabesh Decl. ¶ 3, Ex. A.) Plaintiff and BMW briefly conferred by telephone later that day, with BMW stating that it would provide a response to Plaintiff by the following day, and with Plaintiff confirming that it intended to file this motion by the end of the following day. (*See* Tabesh Decl. ¶ 4, Ex. B (email summarizing telephone conference).)

On May 16, 2019, BMW responded, stating its opposition to this Motion and the proposed continuances of the pre-trial deadlines and expert discovery, or seeking, in the alternative, to have the pre-trial motion deadline continued so BMW could file its Motion for Summary Judgment, which was recently taken off calendar by Judge Hayes for BMW's failure to show good cause to file that motion after the pre-trial deadline had passed. (Tabesh Decl. ¶ 5, Ex. C.) As Plaintiff explained in

his response later that day, BMW should not rely on its own discovery misconduct and delay, *i.e.*, Plaintiff's good cause, as a basis for "good cause" to reopen the pre-trial motion deadline. (Tabesh Decl. ¶ 6, Ex. D.) Such reciprocity would not be appropriate here, particularly where Judge Hayes has already instructed BMW to show its own good case in order for its Motion for Summary Judgment to be heard.

BMW also rejected Plaintiff's proposed amendment of the Mandatory Settlement Conference date, simply stating that other attorneys could attend in Mr. Rosenstein's absence, ignoring that Mr. Rosenstein is in fact lead trial counsel on Plaintiff's behalf.[9] (Declaration of Michael H. Rosenstein ("Rosenstein Decl.") ¶¶ 3-6.)

Finally, BMW argued that discovery should not be reopened because Plaintiff's expert, in his December 21 disclosure, did not expressly state his need for additional information in that disclosure. This ignores the simple fact, however, that Plaintiff's expert simply relied on the documents that had been disclosed to him. And in any event, Plaintiff's expert disclosure did, contrary to BMW's assertion otherwise, state that he "may, pursuant to Rule 26 E of the Federal Rules of Civil Procedure, supplement, update or modify this report at a later date based upon additional documents and/or information. (Tabesh Decl. ¶ 7, Ex. E.)

### III. LEGAL ANALYSIS

#### A. The Legal Standard Applicable to a Request to Modify the Scheduling Order

Once the district court issues a pretrial scheduling order, a party must show

---

[9] BMW certainly recognizes Mr. Rosenstein's importance to this case, as Mr. Rosenstein litigates many cases against BMW, including the two cases that interfere with his ability to attend the Mandatory Settlement Conference here, both of which are against BMW and which implicate the same type of N63 engine found in the Subject Vehicle. (*See* Rosenstein Decl. ¶¶ 4-6 and fn. 1.) Mr. Rosenstein's experience against BMW, as well as his involvement as Lead Trial Counsel in this case, are why Plaintiff needs his attendance at the Mandatory Settlement Conference (*id.* ¶¶ 4-6.), and it should not be BMW that dictates which attorneys should attend the Mandatory Settlement Conference on Plaintiff's behalf.

good cause under Rule 16 to seek an extension of the case management dates. *See* Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting that "motion to amend the scheduling order" is governed by Rule 16(b)). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Id*. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. *Id*. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *Id*.

**B.    Plaintiff Has Shown Due Diligence**

**1.    BMW's pervasive discovery misconduct, which continues to this day, provides good cause for amending the case schedule**

The earliest reasonable time Plaintiff could have sought amendment of the Scheduling Order based on BMW's discovery malfeasance was after April 23, 2019, when Plaintiff received BMW's declarations, which evinced BMW's lack of good faith by seeking to complete its discovery obligations by misleading the Court in those declarations, as well as revealing BMW's earlier attempts to mislead the Court in its Supplemental Brief, on which the Court relied when issuing its Discovery Order. Even after the Court had found that BMW had violated the Discovery Order, BMW continued to obstruct discovery, as revealed in the Brown and Yontz declarations.

Indeed, BMW's discovery misconduct and delay includes, but is not limited to, the following (*see generally* Docket No. 89-1):

• BMW violated the Court's Supplemental Briefing Order (Docket No. 50) by filing a Supplemental Brief (Docket No. 53) that misrepresented and concealed BMW's database search capabilities, which resulted in the Court issuing an order that produced absurd database search results, with 83,000 hits

generated in BMW's Warranty database, but <u>no hits</u> generated in BMW's CR and PuMA databases, because the types of defect codes identified by BMW in its Supplemental Brief as searchable in all of its databases are only applicable to its Warranty database; and even though Plaintiff had identified exemplar responsive documents that should have been identified but were not, and the warranty data that was produced expressly included hundreds of references to PuMA documents;

• BMW violated the Court's Discovery Order (Docket No. 55) by completely ignoring every deadline set forth therein to produce ordered discovery, and failing to meet and confer in good faith on email search terms and database search terms, thus sabotaging the meet-and-confer process; and

• BMW violated the Court's Sanctions Order (Docket No. 77) by limiting its database search terms only to search terms found in its Warranty database, but using those same search terms to search its CR and PuMA databases, knowing they would generate 0 hits; declining to modify its searches or otherwise take corrective measures, despite the Court's invitation to do so if BMW believed that its searches "mistakenly" should have produced hits but did not (thus confirming that BMW's conduct has been willful in this regard); offering dishonest and incomplete declarations that were crafted to deceive the Court and conceal misrepresentations made in BMW's Supplemental Brief; representing to the Court that it would, "in a good faith effort," use Plaintiff's proposed search terms to search Michael Murray's emails, but then using additional search terms that were expressly rejected by Plaintiff, which resulted in <u>0 hits</u>; and claiming its Bang production was complete when it was not.

As soon as the Brown and Yontz declarations were filed, Plaintiff attempted to meet and confer with BMW regarding their deficiencies and the misconduct they revealed for the first time, but BMW refused to budge. (*See* Docket No. 89-1 at 15:18-16:15.) Accordingly, Plaintiff committed all of his resources into preparing and filing his Second Motion for Sanctions. With the second motion

filed, Plaintiff has immediately turned to filing this *Ex Parte* Motion, demonstrating his diligence in prosecuting this case.

Under these circumstances, where certain discovery remains pending, Plaintiff has good cause to amend the scheduling order. *See, e.g.*, *See Davis v. Calvin*, No. CIVS071383FCDEFBP, 2008 WL 4287149, at *2 (E.D. Cal. Sept. 10, 2008) ("The schedule must be modified to permit the instant motion [to compel], and if granted, to completed the limited discovery that [defendants] seek."); *Univ. of Tulsa v. Johnson Matthey Inc.*, No. 16-CV-103-TCK-PJC, 2016 WL 10567162, at *2 (N.D. Okla. Oct. 26, 2016) ("As the basis for the requested extension, Tracerco primarily focuses on the Motion to Compel it filed on September 29, 2016. This motion remains pending and will not be fully briefed until early November. The current discovery deadline of November 30, 2016 makes it difficult for the parties to obtain a ruling from the Court on the motion with enough time to complete discovery. Accordingly, the Court finds modification of the current scheduling order to be appropriate."). Here, there is even more good cause than these cases, because in these cases, motions to compel had not been granted, whereas here, the Court has already granted a motion to compel discovery and a motion to compel compliance.

Under these circumstances, Plaintiff has established the diligence necessary to support a finding of good cause to amend the case schedule.

> **2. Even if BMW's discovery is complete, BMW delayed matters for at least 11 weeks, providing good cause of amending the case schedule**

To the extent that BMW objects to and/or denies the discovery misconduct described in Plaintiff's Second Motion for Sanctions, it is undisputed that the Court has already found the BMW violated the Court's Discovery Order by ignoring the February 5 deadlines for production set forth therein. (*See* Docket No. 77 at 3:5-7 "At this point in time, BMW has had almost three months to comply

since the Court's January 15 Order. BMW attempts to blame the delay on Plaintiff, stating that he should have agreed to limit the search. The Court rejects this position—BMW was the party under Court order to produce and should have conducted its search bearing in mind the Court's deadlines and accounted for the time it would to review the results."). And based on this, BMW was ordered to produce all discovery and file declarations attesting to its completion of discovery by April 23 (*see id.* at 6:10-13, 7:3-6, and 8:8-10). Thus between February 5 and April 23, consistent with the Court's findings in its Sanctions Order, BMW is solely responsible for this 11-week delay.

And further, Plaintiff and his expert require time to review the discovery BMW has produced. This has been made more difficult, unfortunately, by BMW's bad faith in producing warranty data in .PDF form (instead of in its native format or in Excel format, *i.e.*, as used in the ordinary course of business), and its stripping this information of key date. (*See*, *supra*, fn. 1.)

Accordingly, even if BMW denies the other instances of misconduct[10] for which the Court has not ruled (as Plaintiff's Second Motion for Sanctions remains pending), Plaintiff has established the diligence necessary to support a finding of good cause to amend the case schedule here.

### C. BMW Cannot Reasonably Claim Prejudice Where Its Own Conduct Is the Source of any Alleged Prejudice

While prejudice to the party opposing amendment is not a key inquiry, it is something a court may consider when ruling on amendments to the case schedule under Rule 16(b). *See Johnson*, 975 F.2d at 609. Here, BMW cannot reasonably claim prejudice, because the only reason Plaintiff has been forced to seek amendment of the case schedule is BMW's delay in producing relevant discovery, in violation of multiple Court orders to do so. (*See* Docket No. 55 and 77.) Indeed,

---

[10] Plaintiff simply presents this point for the sake of argument; no doubt, BMW's has not completed its discovery production.

the Court has already found that BMW violated its Discovery Order by failing to produce documents at the February 5 deadline, and Plaintiff has set forth, in his pending Second Motion for Sanctions, how BMW violated two other Court orders by knowingly setting forth misrepresentations to the Court.

In particular, any claim to prejudice by BMW regarding Plaintiff's request to reopen expert discovery is undermined by the fact that for the past two weeks, BMW has aggressively sought to schedule a deposition of Plaintiff's expert, including noticing him for deposition as recently as April 25. (Tabesh Decl. ¶ 8, Ex. F; *see also* Docket No. 89-20 (May 7 letter from BMW counsel seeking, *inter alia*, to schedule deposition of Plaintiff's expert).) Of course, just like its improper filing of its Motion for Summary Judgment, BMW has sought to depose Plaintiff's expert without going through the proper step—as Plaintiff is here—of seeking to reopen expert discovery after a showing of good cause. As usual, BMW simply refuses to play by the rules.

### IV. RELIEF IS REQUIRED ON AN *EX PARTE* BASIS

*Ex parte* relief is appropriate where the moving party seeks relief that cannot be addressed by a regularly noticed motion, and will face prejudice if its application is denied, provided that the party is without fault in creating the need for *ex parte* relief. *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (1995).

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges this Court to grant this *Ex Parte* Motion.

Dated: May 17, 2019           Respectfully submitted,

**EcoTech Law Group, P.C.**

By: /DARA TABESH/
    Dara Tabesh
    Attorney for Plaintiff Mike Jensen