UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JENSEN,<br><br>                      Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; BRECHT ENTERPRISES, INC. dba BMW OF ESCONDIDO; and DOES 1-100, inclusive,<br><br>                      Defendants. | Case No.: 18cv103-WQH (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR SANCTIONS**<br><br>**[ECF No. 89]** |

Before the Court is the Plaintiff Michael Jensen's second motion for sanctions against Defendant BMW of North America, LLC ("BMW"). ECF No. 89. BMW filed an opposition, and Plaintiff filed a reply. ECF Nos. 101, 102, 109. After due consideration of the parties' arguments and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I.    BACKGROUND

In his complaint, Plaintiff alleges that he purchased a 2011 BMW 550i vehicle manufactured and distributed by BMW, which was covered by an express written warranty for the utility and performance of the vehicle for a period of time. ECF No. 1-3 at ¶¶ 8-9. Plaintiff alleges that, during the warranty period, he experienced numerous

defects with the vehicle. *Id.* at ¶ 10. He claims that Defendants were unable to adequately repair the defects but failed to replace the vehicle or buy it back. *Id.* at ¶ 11. Plaintiff brings causes of action under the Song-Beverly Consumer Warranty Act, for breach of warranty, and for fraud.

On November 30, 2018, the parties brought a joint motion for determination of discovery dispute, where Plaintiff sought to compel BMW to respond to several discovery requests. ECF No. 49. After supplemental briefing was completed, the Court issued an order on January 15, 2019, directing BMW to produce certain documents within a certain timeframe. ECF No. 55.

On March 4, 2019, Plaintiff filed his first motion for sanctions. In the motion, he argued that BMW failed to comply with the Court's January 15 order by failing to produce documents within the required timeframe. ECF No. 61. BMW opposed the motion, and Plaintiff filed a reply. ECF Nos. 65, 67. On April 9, 2019, the Court issued an order granting in part and denying in part Plaintiff's first motion for sanctions. ECF No. 77. That order required BMW to produce further documents by a deadline, after which BMW would start to incur a monetary sanction. *Id.*

Pursuant to the April 9 order, BMW filed two declarations on April 23, 2019, stating that it was in compliance with the Court's order and further providing information required by the order. ECF Nos. 86, 87. Plaintiff then filed the instant motion, arguing that BMW's declarations and production of documents are still insufficient, and in violation of the Court's previous orders. ECF No. 89.

**II.  LEGAL STANDARDS**

Federal Rule of Civil Procedure 37 empowers the Court to issue sanctions where a party fails to obey a previous order to provide discovery. The Rule enumerates the following actions a court may take: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in

2

evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A). The Court has broad discretion regarding the type and degree of discovery sanctions it may impose pursuant to Rule 37 and can impose any sanction it sees as just. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976). "When sanctions are warranted, the Court must determine the appropriate level or severity of sanctions based on the circumstances of the case." *Daniels v. Jenson*, No. 2:11-CV-00298-JCM, 2013 WL 1332248, at *2 (D. Nev. Mar. 11, 2013).

### III. DISCUSSION

#### A. Violation of Court Order

First, the Court must determine whether BMW is in violation of the Court's prior orders. The April 9 order compelled BMW to further produce on several categories of documents, some of which Plaintiff claims are still incomplete. The Court will address each of these in turn.

##### i. The Database Documents

The first category of documents Plaintiff sought to compel from BMW was documents from the PuMA database, the Customer Relations/Contacts database, and the Warranty Repair database. In its original January 15 order, the Court ordered BMW to conduct a search across these three databases, limited to vehicles of the same year, make, and model as Plaintiff's subject vehicle and limited to only those records reporting problems with the same defect codes listed in any repair records pertaining to Plaintiff's vehicle and part numbers under warranty in Plaintiff's vehicle. ECF No. 55 at 9-10. The Court furthered ordered the parties to meet and confer to determine what those defect codes and part numbers should be. *Id.* at 10.

At the time of Plaintiff's first motion for sanctions, BMW had not yet produced the

3
18cv103-WQH (NLS)

documents but stated that its searches yielded 83,000 hits in the Warranty Repair Database, but 0 hits in the PuMA and Customer Relations/Contacts databases. ECF No. 65 at 6. Plaintiff's counsel raised questions about the discrepancy in results between the databases. *See* ECF Nos. 67-5-67-9. Accordingly, the Court ordered the production of documents and a supporting declaration from BMW, signed under the penalty of perjury, from someone with knowledge of the searches, with at least the following information: 1) a list of part numbers and defect codes searched in each of the PuMA, Customer Relations/Contacts, and Warranty Repair databases; 2) a statement regarding how many records hit on the search terms and of these records, how many were deemed responsive for production; and 3) as for the PuMA or Customer Relations/Contacts databases, a) an explanation of why the records highlighted by Plaintiff in his reply did not produce hits; and b) if BMW concludes that the records should have produced hits and mistakenly did not, an explanation of the new search run and/or any other corrective measures taken to ensure the results are now accurate. ECF No. 77 at 5-6.

BMW filed a timely affidavit regarding its production of the database documents. ECF No. 86. The declaration listed the exact defect codes and defect item (part) numbers used to search the databases. *Id.* at ¶ 2. BMW stated that the search produced 82,640 hits in the Warranty Repair database, which were all deemed responsive for production and those results were produced. *Id.* at ¶ 3. BMW also confirmed that the search did not produce any hits in the PuMA or Customer Relations databases because "the part numbers and defect codes set forth above do not appear in those databases" and that it did "not believe the search of the PuMA and Customer Relations databases for the part numbers and defect codes should have produced hits and mistakenly did not." *Id.* ¶ 4.

Plaintiff does not have an issue with the results from the Warranty Repair database, but takes issue with the results from the PuMA and Customer Relations databases. ECF No. 89-1 at 7-9. Plaintiff argues that BMW searched using codes that produced results in the Warranty database, but knew that they would not produce results in the other two databases because those codes and/or part numbers did not appear in the other two

databases.

After reviewing the prior submissions and the orders, the Court agrees that BMW does not appear to have been forthcoming about the search results in the PuMA and Customer Relations databases. In the briefing on the initial motion to compel, the Court ordered BMW to provide supplemental briefing to provide information on "if and how these databases can be searched or queried, including but not limited to using database fields for repair, defect, labor and part codes or any such similar codes, or through keyword searches." ECF No. 50 at 3. In response to this order, BMW submitted briefing that stated that each of the three databases at issue can be searched "by vehicle make and model, specific part numbers, and specific fault codes that appear on a vehicle's repair history." ECF No. 53 at 1-2. Thus, on the basis of this almost identical language to describe how each of these databases can be searched, the Court subsequently ordered BMW to produce documents from these databases by searching with "the same defect codes listed in any repair records pertaining to Plaintiff's vehicle and part numbers under warranty in Plaintiff's vehicle." ECF No. 55 at 10. This ruling was based on the reasonable assumption from BMW's briefing that the databases can be identically and meaningfully searched using "fault codes" and "part numbers" found in Plaintiff's repair records.

Therefore, even assuming BMW's declaration that there are 0 hits in the PuMA and Customer Relations databases is literally true, this result may have been caused by an inaccurate description of those databases and how they can be searched made in the prior briefing. BMW's opposition does not provide any additional information to explain this difference in searching between the databases. Based on the record before it, the Court cannot find that BMW acted cooperatively and in good faith to provide the discovery contemplated by the Court's previous order. Indeed, in the last sanctions order, the Court ordered BMW to investigate the issue with the PuMA and Customer Relations databases and take corrective measures if necessary to provide accurate search results from those databases. If BMW knew that those databases could not be searched with the same

5

defect/fault codes and/or part numbers as the Warranty database—thus producing 0 results—it should have found a solution such that relevant results from those databases could be produced.

Accordingly, the Court finds that BMW has not fully complied with its previous orders as to the PuMA and Customer Relations databases.

### ii. Emails Searches

The second category of documents Plaintiff sought to compel from BMW was emails from certain of its engineers. Plaintiff suggested that the following terms could be used to search the emails:

- N63 or N-63 or F10 and engine and defect
- N63 or N-63 or F10 and engine and problem
- N63 or N-63 or F10 and engine and problem and fix or countermeasure
- N63 or N-63 or F101 and engine and excessive oil consumption
- N63 or N-63 or F10 and customer care package or CCP
- N63 or N-63 or F10 and engine and defect
- N63 or N-63 or F10 and engine and safety
- N63 or N-63 or F10 and excess! Oil Cons!

ECF No. 54 at 3-4. In its order on the motion to compel, the Court adopted Plaintiff's compromise on this issue, which was to search the emails of two engineers, but rather than adopting Plaintiff's exact search terms, for the parties to meet and confer and work cooperatively to develop a more robust search string to use. ECF No. 55 at 11-12.

The parties were unable to do that successfully, and Plaintiff filed the initial motion for sanctions. In that motion, Plaintiff attached correspondence that suggested a slight modification of the above, adding only the term "or complaint" to the first and sixth search strings above. ECF No. 61-7 at 2-3. In response, BMW stated that the search terms were "too broad and burdensome" and instead suggested the following:

- N63 or N-63 and defect! and 2011 and 550i

- N63 or N-63 and excess! oil consum! and 2011 and 550i
- N63 or N-63 and fix or countermeasure and 2011 and 550i

ECF No. 61-18 at 2. Plaintiff objected to this proposal, stating that "[b]ased on our experience, engineers generally do not identify vehicles internally by make, year, and model, but rather, by body type [i.e. F10]." ECF No. 61-19 at 2. The parties made no further progress on this issue before filing the first motion for sanctions.

In its opposition to that motion, BMW stated that it is now "utilizing Plaintiff's proposed searched terms to search Mr. Murray's email." ECF No. 65 at 5. The Court accepted this statement and ordered the production of the emails and for BMW to submit an affidavit confirming what search terms it used after the production.[1] ECF No. 77 at 6-7. BMW again submitted a timely affidavit on April 23, 2019. The affidavit stated that "Michael Murray's emails were searched for 2011 550i vehicles using the following search terms:" and listed the search terms from Plaintiff's email correspondence during the meet and confer process. ECF No. 87 at 2; *see* ECF No. 61-7 at 2-3. BMW stated that the search produced no results. ECF No. 87 at 2.

Plaintiff argues that this declaration does not comply with BMW's statement that it would used his search terms because BMW qualified the search with the emails "were searched for 2011 550i vehicles," which means that what BMW actually did was to import the limitation Plaintiff objected to during the meet and confer—to limit the search for emails mentioning the year and make of the vehicle, which engineers do not typically use in email correspondence. ECF No. 89-1 at 11-12. BMW does not clarify in its opposition what exact search it ran and what it meant by the qualifier "for 2011 550i vehicles," but does argue that the discovery at issue here only covered vehicles of the same year, make, and model as Plaintiff's vehicle, a 2011 550i. ECF No. 101 at 3-4.

---

[1] The first motion for sanctions raised another issue as to whether the search would be limited to Mr. Murray or another engineer in addition to Mr. Murray. The Court ruled that it would be limited to only Mr. Murray. ECF No. 77 at 7. That issue is not in dispute for this motion, so the only relevant emails are Mr. Murray's emails.

BMW is correct that the original discovery requests did all relate to vehicles of the same year, make, and model as the subject vehicle. *See* ECF No. 55 at 3-5. However, it does not necessarily follow that a document must mention "2011" and "550i" on its face to be deemed "related" to such a vehicle. The N63 engine found in a 2011 550i vehicle, for example, is in other models of cars and BMW has not made a showing that an engineer will necessarily list the year and make of all those models of cars when discussing the engine in the car. Both parties could have worked together more cooperatively to find search terms that would have been better captured the desired emails, but the parties unfortunately did not do so.

Nevertheless, BMW stated—and the Court accepted its representation—that it would run the search as Plaintiff requested. The issue of whether the emails would mention 2011 and 550i came up during the meet and confer process, as evidenced by the submissions to the Court, and it was clear that the Plaintiff did not accept the suggested change to limit the search that way. BMW was aware of this issue when it told the Court it would adopt Plaintiff's search terms and if it had wanted to argue the issue of 2011 550i, the time to do so would have been on the initial motion for sanctions.

Accordingly, the Court finds that BMW has not fully complied with its previous orders as to the search of Mr. Murray's emails.

### iii. *Bang* Litigation Documents

The third category of documents Plaintiff sought to compel from BMW was documents from the *Bang* litigation. The Court ordered BMW to produce documents already collected and produced in the *Bang* litigation that are responsive to the discovery requests Plaintiff propounded in this case. ECF No. 55 at 9; ECF No. 77 at 8.

Plaintiff states that 44 pages of documents in total were produced and argues generally that because of BMW's pattern of dishonest behavior, that Court should question whether this production is complete. ECF No. 89-1 at 14. Without a more concrete reason to believe that BMW has improperly held back *Bang* litigation documents that may actually be relevant, the Court cannot find that BMW is in violation

of its prior orders here.

As to timeliness of the production, BMW concedes the production was not timely. BMW's declaration stated that one set of documents was produced on April 9, 2019 and another set on April 23. Accordingly, BMW states that it owes fines in the amount of $1100.00 and BMW's counsel states that he has asked for a check to be processed. The Court accepts this amount for the sanction and **ORDERS** BMW to pay it as follows: BMW shall pay a discovery sanction in the amount of $1100.00 for its failure to comply with the Court's April 9, 2019 Order (ECF No. 77). This payment shall be made to the Miscellaneous Fines, Penalties and Forfeitures, Not Otherwise Classified, fund of the United States Treasury. The check must be made payable to the Clerk of the Court, and the memo line must include this case number. Payment may be made in person at the Clerk's office or by mail to the following address:

> U.S. District Court
> Southern District of California
> Financial Department
> 333 West Broadway, Suite 420
> San Diego, California 92101

BMW shall file a Notice of Payment of Sanction to the Court upon submission of payment.

### B. APPROPRIATE SANCTIONS

Having found that BMW did not fully comply with the Court's previous orders, however, the Court declines to adopt any of the sanctions that Plaintiff suggests.

Before considering the appropriateness of any sanction, the Court is mindful of the connection between the discovery sought and what issues in the case it pertains to. In its order on the parties' original motion to compel, the Court found that the discovery sought as to other vehicles may be relevant to the question of willfulness, as it pertains to the civil penalty under California Civil Code § 1794(c). ECF No. 55 at 7. Indeed, Plaintiff made this primary relevance argument in his own briefs. *See* ECF No. 49-37 at 4-5 ("Specifically, under Song-Beverly, BMW's knowledge and understanding of the defect

9

in the same vehicle type implicates BMW's willfulness and intent in failing to repair Plaintiff's vehicle after a reasonable number of attempts or to offer restitution, which may trigger civil penalties up to twice the amount of actual damages."); *id.* at 7 ("As set forth above, BMW's state of mind is plainly relevant—at a minimum—to the Civil Penalty claim."). As to underlying liability, the Court stated that "generally, the Court agrees with BMW that the evidence required to prove liability under Song-Beverly focuses on records concerning **the specific vehicle at issue**." ECF No. 55 at 7 (emphasis added).

Plaintiff first requests terminating sanctions as to its several causes of action, including liability under Song-Beverly, breach of implied warranty of merchantability, and fraud. ECF No. 89-1 at 16-19. While terminating sanctions are contemplated under Rule 37, they are only warranted under "extreme circumstances." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985). Furthermore, any imposed sanction under Rule 37(b)(2) must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The Court finds that the terminating sanctions Plaintiff seeks are not a proportionate sanction for the discovery misconduct here because the discovery sought in the first place does not sufficiently relate to the claims for which he seeks terminating sanctions. In addition, one of the factors to be considered before ordering terminating sanctions is the availability of less drastic sanctions. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Because the Court finds a more appropriate sanction as discussed below, it declines to impose terminating sanctions.

Plaintiff alternatively requests issue and/or evidentiary sanctions that again relate to the same causes of action for which he requested terminating sanctions. ECF No. 89-1 at 19-24. For the same reasons above as to the discovery being not sufficiently related to the claims, the Court also declines to impose these sanctions.

Finally, Plaintiff alternatively requests a stay of the case pending the production of the discovery. ECF No. 24-25. At this late juncture and after the considerable time and

motion practice that has been devoted to these documents that relate to only an ancillary issue in the case, the Court does not find that ordering production is the appropriate remedy either. BMW has had ample time to cooperate to produce the discovery and has forfeited the opportunity to do so at this time.

Instead, the Court finds it appropriate to issue a limited adverse inference instruction, narrowly tailored to the documents in dispute and to the issues to which they relate, subject to a few caveats. <u>First</u>, the Court, so far, has only ruled as to the relevance of these documents regarding other vehicles under Rule 26; their admissibility at trial is not yet determined. Thus, this instruction would only be issued if the discovery sought is determined to be admissible at trial. <u>Second</u>, under these circumstances, the Court finds it appropriate to limit the sanction here only as it pertains to the issue of the willfulness and the civil penalty under California Civil Code § 1794(c). <u>Third</u>, because of the limited scope to which the instruction applies, it would only be pertinent and/or given upon a finding by the jury of liability in the first place. <u>Finally</u>, the undersigned proposes this instruction should Judge Hayes decide to use it, and it is subject to any modification that he deems appropriate as the trial judge.

Accordingly, the Court proposes the following adverse inference instruction, to be given in accordance with the limitations above:

> "Upon a finding of liability and only as to the issue of willfulness and the civil penalty under California Civil Code § 1794(c) when calculating damages, and in addition to the other evidence heard during trial, the jury may consider the following:
>
> 1) BMW did not fully comply with the Court's orders to produce emails from one of its engineers and records from two of its databases, related to similar engine oil consumption and air conditioning defects in vehicles of the same year, make, and model as Plaintiff's vehicle.
>
> 2) If BMW had complied, you may assume the following:
>
> > i. Searches in the PuMA and Customer Relations/Contacts databases would have revealed a similar volume of customer complaints as retrieved from the Warranty Repair database,

   regarding vehicles of the same make, year, and model as Michael Jensen's vehicle.

  ii. Emails from Michael Murray would have revealed correspondence regarding the engine found in Michael Jensen's particular vehicle and discussed similar issues with the engine, as revealed by the complaints from the Warranty Repair database.

These inferences are not to be considered for any other purpose."

### C. BMW'S REQUEST FOR SANCTIONS

In its opposition papers, BMW requests that the Court impose sanctions on Plaintiff for filing this motion. ECF No. 101 at 9. Because the Court grants in part Plaintiff's motion, the Court will **DENY** the request for sanctions.

### IV. CONCLUSION

Accordingly, and consistent with the discussion above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's second motion for sanctions.

**IT IS SO ORDERED.**

Dated: June 7, 2019

_/s/ Nita L. Stormes_
Hon. Nita L. Stormes
United States Magistrate Judge